UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                    CASE NO. 95-80919
                                    HON. LAWRENCE P. ZATKOFF

DEON ANTONIO THOMPSON,

      Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on June 18, 2007.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

On June 12, 2007, the Court conducted a hearing on Defendant's alleged violations of the conditions of his supervised release. Upon determining that Defendant had committed four of the five alleged violations, the Court imposed a sentence of thirty-six (36) months imprisonment. The Court issues this Opinion to set forth the reasons for its conclusions.

**II. ANALYSIS**

**A.    The Alleged Violations**

The Government alleged that Defendant violated the following five conditions of his supervised release:

(1) Defendant shall not commit another federal, state or local crime.

(2) Defendant shall report to the probation officer as directed by the Court or the probation officer, and shall submit a truthful and complete written report within the first five days of each month.

(3) Defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons.

(4) Defendant shall notify the probation officer at least ten days prior to any change in residence or employment.

(5) Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

**B.** **Hearing**

At the hearing, the Court received as exhibits (a) an "Investigator's Report" from the Detroit Police Department listing the Defendant as Deon Antonio Thompson, (b) a Preliminary Complaint Record, (c) a letter to Defendant dated April 3, 2007, with a subject of "Reporting Procedures," (d) a "Consent Judgment of Filiation" dated September 27, 2006, signed by Defendant and Charlene Renee Clark, and (e) a Monthly Supervision Report for the Month of October for Deon Thompson, from the file of Defendant's then-probation officer Floyd Anderson.

Defendant acknowledged at the hearing that he had not filed all of the written reports or reported as required (but stated that he did not fail to report as often as the probation officer indicated). Defendant denied all of the other allegations. The Court now addresses each of the five alleged violations, separately.

**C.** **Analysis of Alleged Violations**

  *1.* *Defendant Committed Another Crime*

  On September 27, 2006, Defendant was arrested and charged with Felony Firearms. On January 25, 2007, Defendant was found not guilty and the charges were dismissed by a Judge

in the 3rd Circuit Court, Wayne County, Michigan. In that state court proceeding, the burden of proof was beyond a reasonable doubt. In the matter before this Court, *i.e.*, an alleged supervised release violation, however, the burden of proof is by a preponderance of the evidence. For the reasons that follow, the Court finds that the Government has met its burden with respect to this alleged violation.

An Investigator's Report listing Deon Antonio Thompson as the Defendant states, in part (emphasis added):

> On the above date and time a search warrant was executed at the above location [437 Jefferson Ct., Detroit, Michigan]. Upon arrival purpose and presence was announced and entry was made through the front door. Upon entry the above perp [Defendant] was frozen by P.O. Panackia in the northeast bedroom. Once the location was secured a search of the premises was conducted. P.O. Gensler confiscated a BSR 22 caliber loaded with 5 live rounds on the shelf inside the closet and a NPA 25 caliber loaded with 4 live rounds confiscated from top of the dresser both firearms were in the Northeast bedroom where the perp was frozen. **The perp stated he did reside at the location and he was on probation**.

Government Exhibit 1, at 1. The Investigator's Report also states:

> P.O. Neil Gensler, 3985, will testify to being part of the raid crew, to confiscating a loaded 22 BSR with 5 live rounds and to confiscating a loaded NPA 25 caliber with 4 live rounds from the N/E Bedroom.
>
> \* \* \* \* \*
>
> P.O. Lynn Moore, 3888, will testify to being shotgun backup, to confiscating POR (1) charter one gold debit card and a crains Detroit business order form in the name and address of the abv. defendant, to confiscating numerous empty clear z/l's.

*Id.*

As the Investigator's Report reflects, (a) Defendant admitted he resided at 437 Jefferson Ct., Detroit, Michigan (the "Jefferson house"), where the guns were found, (b) mail at the

3

house was addressed to Defendant at the Jefferson house address, and (c) the guns were found in the northeast bedroom where the police found Defendant. In addition, at the state court proceeding, one officer testified that he found the .25 caliber on the dresser in the northeast bedroom, and the dresser was covered with mail, perfume bottles, etc. Another officer testified that when he conducted a search of the northeast bedroom, "he recovered mail on the dresser, (same dresser where the .25 caliber was recovered), bearing Defendant's name and address." *See* Government Exhibit 1, at 3.

Subsequently, Defendant testified at the hearing, wholly to his detriment. Among other statements made at the hearing, Defendant stated that he was at the Jefferson house to gamble and had only been there a couple of times (which he later indicated meant a few times). Defendant then stated that, notwithstanding his very limited visits to the Jefferson house, he had his mail (including his employment checks) sent there. Defendant claimed he made that decision because his mother didn't keep track of mail at the 5399 Spokane, Detroit, Michigan, which was the address he reported as his residence to the probation department (the "Spokane house"). Defendant later stated that the mail addressed to him (with the Jefferson address on it) that the police confiscated during the execution of the search warrant at the Jefferson house was not on the dresser but was in his back pocket. Defendant subsequently stated that there were not even guns on the dresser. As the Government observed, it was hard to follow which version of the story Defendant was pursuing. In the end, none of his stories were believable.

Accordingly, based on

(1) the information from Government Exhibit 1,

(2) the testimony of the officers at the state court proceeding, and

(3) the ever changing, yet increasingly incredible, testimony of Defendant at the hearing,

4

the undersigned concludes and is convinced, by at least a preponderance of the evidence, that Defendant did possess the firearms at the Jefferson house. Accordingly, the Court finds that Defendant violated the condition of his supervised release that he not commit another crime.

   2.   *Defendant Did Not Report to Probation as Required*

As noted above, Defendant acknowledged at the hearing that he had not filed all of the written reports or reported as required. Accordingly, the Court finds that, by his own admission, Defendant violated the condition of his supervised release that he report to the probation officer as directed by the Court or the probation officer, including submitting a truthful and complete written report within the first five days of each month.

   3.   *Continued Employment*

Probation officer Tim Genyk testified that he had called a number given to him to verify Defendant's employment. Mr. Genyk testified that the person who answered the phone stated that Defendant was employed as Defendant suggested. Defendant also testified that he worked for a limousine company. On the basis of the foregoing information, the Court finds that the Government has not met its burden of proof with respect to Defendant's failure to maintain employment and that no supervised release violation has occurred with respect to such allegation.

   4.   *Notification of Change in Residence*

As noted above, the police found mail addressed to Defendant at the Jefferson house when they conducted the raid in September 2006. Defendant has not denied that mail has been delivered to him at that address or that he uses that address to have his mail sent to him. Further, Defendant admitted to police during the search that he resided at the Jefferson house. In addition, on April 12, 2007, the probation department conducted a home visit to the Spokane home, the

address Defendant has reported to the probation department as his residence. The probation officer reported that it "appeared as though no one resided at the residence and the mail was in the name of Elizabeth Becker. Additionally, this writer had sent a certified letter to the residence and did not receive confirmation back indicating Mr. Thompson received the letter." Defendant never notified the probation officer that his address had changed.

For the foregoing reasons, the Court concludes that Defendant changed his residence without notifying the probation officer at any time (to say nothing of providing such notification at least ten days prior to the change) and that such a failure constitutes a violation of that condition of his supervised release.

   5.   *Notification of Arrest*

Defendant claims to have notified his probation officer about his arrest on November 30, 2006 (the date written next to his signature on the Monthly Supervision Report for the Month of October, 2006). Even if Defendant did so, that notification is excessively untimely, as the 72 hour period within which he was required to make such notification had passed on or about October 1, 2006. Accordingly, the Court finds that Defendant also violated this condition of his supervised release.

**D.   Defendant's Sentence**

When sentencing a defendant, the Court must consider the relevant factors from 18 U.S.C. § 3553, and articulate the reasons for its sentencing decision. *United States v. McBride,* 434 F.3d 470, 476 (6th Cir. 2006). The Court will now analyze the relevant factors as they relate to Defendant.

   1.   *The Nature and Circumstances of the Offenses*

The nature and circumstances of the offenses for which the Court concluded that Defendant violated his conditions of supervised release are set forth above.

2. *The History and Characteristics of the Defendant*

On June 4, 1996, Defendant pled guilty to a charge of conspiracy to distribute controlled substances (heroin). His Rule 11 Plea Agreement provided for a Guideline range of 135 to 168 months, but the Court sentenced him to only 80 months following a request for downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. §3553(e). In exchange for his plea, the Government dismissed several counts of unlawful use of a telephone and, more significantly, one count of felon in possession of a firearm. In addition to that conviction, Defendant was convicted of Attempted Carrying a Concealed Weapon in 1984 and Carrying a Concealed Weapon in 1992. As such, Defendant has a long history of possessing firearms illegally.

3. *The Seriousness of the Offense*

With respect to the non-criminal activity of Defendant while on supervised release, the Defendant's compliance (or, more accurately, lack thereof) are documented as follows:

> Since the outset of supervision, the offender has been given several warnings verbally regarding lack of verification of his employment. Mr. Thompson appears not to take his supervised release seriously and tends to make excuses not to report or provide verifying documents to the probation department. Despite several conversations with the probation department, Mr. Thompson refuses to comply with his conditions of supervised release. In September 2006, Mr. Thompson was arrested for Felony Firearms as there was a search conducted at his supposed residence, which had not been reported to the probation department. Further, Mr. Thompson had absconded from supervision. The probation department has sent letters, attempted telephone contact and a home visit which all have been unsuccessful in locating Mr. Thompson.

Defendant's continued and thorough disparagement of his conditions of supervised release are

serious violations in themselves. His disregard for authority is evidence of a continued unwillingness to comply with the rules that govern him.

Moreover, Defendant's continued illegal possession of firearms over the last 23 years (at least) is especially dangerous and disconcerting. Such possession demonstrates that Defendant continues to engage in a potentially dangerous, even deadly, lifestyle and a refusal to live by the laws that apply to him. Such an attitude and lifestyle create environments that plague many areas of this judicial district, resulting in dangerous living conditions for not only those who chose to engage in such a lifestyle, but also the innocent persons upon whom such environments and dangers are thrust.

4. *Promote Respect for the Law*

The Court finds that Defendant has absolutely no respect for the law. In addition to violating many conditions of his supervised release, he took the stand at the supervised release hearing and lied, over and over, to the extent that his stories contradicted themselves. When Defendant was sentenced by this Court the first time, Defendant was shown leniency when his sentence essentially was cut in half. Nonetheless, Defendant continues to break the law by engaging in substantially similar criminal conduct and/or exposing himself to similar environments (in addition to the guns possessed by Defendant, the search of the Jefferson house yielded a several items of drug paraphernalia). *See* Government Exhibit 1. The previous leniency Defendant has received from the courts not only failed to create respect for the law, but instead appears to have emboldened Defendant to engage in additional serious criminal enterprises.

5. *Afford Adequate Deterrence to Criminal Conduct*

Defendant's previous sentences obviously were insufficient to afford adequate

deterrence. A sentence at or near the top of the Guideline range is necessary in this case to impress upon Defendant that his criminal conduct will not be tolerated by society.

6. *Protect the Public From Further Crimes of the Defendant*

As discussed above, the illegal possession of firearms poses great danger to society, and Defendant has repeatedly engaged in this conduct. A significant sentence (*i.e.*, one at the top of or greater than the Guideline range) is necessary to protect the public from further crimes of Defendant.

7. *Guideline Range*

The Guideline range for the instant offense is 30-37 months. For the reasons stated above and below, the Court finds a sentence at the top of the Guideline range is necessary in this case.

8. *Policy Statements Issued by the Sentencing Commission*

Application note four of Sentencing Guideline 7B1.4 states that: "Where the original sentence was the result of a downward departure (*e.g.*, as a reward for substantial assistance), or a charge reduction that resulted in a sentence below the Guideline range applicable to the defendant's underlying conduct, an upward departure may be warranted." The Guideline range for Defendant's underlying offense was 135-168 months. Defendant's sentence was reduced to 80 months because of substantial assistance. As such, if anything, the facts of this case warrant an upward departure.

### III. CONCLUSION

For all the above reasons, the Court finds that a sentence at the top of the Guideline range is necessary and appropriate in this case. Accordingly, the Court sentences Defendant to thirty-six (36) months imprisonment. Defendant's term of supervised release is terminated and shall not be reinstated.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: June 18, 2007

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 18, 2007.

s/Marie E. Verlinde
Case Manager
(810) 984-3290